UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BARBARA THEODORE, as parent and next friend of A.G.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA, et al.,**<br><br>**Defendants.** | Civil Action No.  09-0667  (JDB) |

**MEMORANDUM OPINION**

Plaintiff Barbara Theodore brings this action as parent and next friend of A.G. against the District of Columbia and Michelle Rhee, the Chancellor of the District of Columbia Public Schools ("DCPS").  Plaintiff alleges that defendants have failed to provide her daughter with testing to determine whether she is eligible for special educational services, thereby violating the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-82.  She also challenges a Hearing Officer Determination ("HOD") that dismissed her case on December 6, 2008.  Now before the Court are defendants' two motions to dismiss plaintiff's complaint.  Upon consideration of defendants' motions, the parties' memoranda, and the entire record, and for the reasons below, the Court will deny defendants' first motion to dismiss and will grant the second motion in part and deny the second motion in part.

**BACKGROUND**

**I.  The Individuals with Disabilities Education Act**

Under the IDEA, all states, including the District of Columbia, that receive federal education assistance must establish policies and procedures to ensure that "[a] free appropriate

public education ['FAPE'] is available to all children with disabilities residing in the State[.]"  20 U.S.C. § 1412(a)(1)(A).  The law defines a FAPE as "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required[.]"  Id. § 1401(9).  Once a child is found to qualify for a FAPE, DCPS is required to develop and implement an Individualized Education Program ("IEP") for him or her.  Id. § 1414(d)(2)(A).  The IEP comprehensively describes the student's present academic level, details measurable annual goals for the student, specifies necessary educational and related services, and establishes the extent to which the student will participate in a regular education classroom.  Id. § 1414(d)(1)(A)(I).

In order to implement the IEP, a team that includes the child's parents determines where the child should be placed.  Id. § 1414(e).  If no public school can meet the child's needs, DCPS is required to place him or her at an appropriate private school and pay the tuition.  Id. § 1412(a)(10)(B)(I); see Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 369 (1985).  If a parent disagrees with the IEP or the subsequent placement, he or she is entitled to an "impartial due process hearing" conducted by the state or local educational agency.  20 U.S.C. § 1415(f)(1)(A).  Any party aggrieved by the hearing decision may bring a civil action in federal district court challenging it.  Id. § 1415(i)(2)(A).

**II.  Factual Background**

A.G. is a fifteen-year-old girl who attends high school in the District of Columbia.  Compl. ¶¶ 5, 8.  DCPS performed a comprehensive psychological exam on A.G. in July and

August 2007 that established that A.G. did not have a learning disability.  See Due Process Hearing Request dated March 12, 2008 at 3 ("DPHR #1") (attached as Compl. Ex. 6).  Plaintiff was dissatisfied with the results of that test and sought additional testing during a multi-disciplinary team ("MDT")/IEP meeting on February 11, 2008.  Compl. ¶ 10.  DCPS declined to fund additional testing, and plaintiff filed DPHR #1 alleging that DCPS denied A.G. a FAPE by failing to fund the additional testing.[1]  Compl. ¶ 11.  An HOD issued on April 7, 2008 ("HOD #1") dismissed the complaint in DPHR #1 with prejudice on the grounds that DCPS had properly determined that A.G. was ineligible for special educational services.  See HOD #1 at 4 (attached as Compl. Ex. 5).

Plaintiff filed another DPHR alleging a denial of a FAPE by failing to evaluate, determine eligibility for, and develop an appropriate IEP and placement for A.G.  See DPHR dated May 23, 2008 at 4 ("DPHR #2") (attached as Compl. Ex. 4).  A second HOD ("HOD #2") dismissed DPHR #2 in July 2008, holding that DCPS properly evaluated A.G. and made a timely determination that A.G. was ineligible for special education services.  See HOD #2 at 5 (attached as Compl. Ex. 3).

Plaintiff had another MDT meeting in September 2008.  She brought a letter dated August 6, 2008, showing that A.G. had been diagnosed with attention deficit with hyperactive disorder ("ADHD") by a psychiatrist.  See Compl. ¶ 17; Letter from Mattie White dated Aug. 6, 2008 (attached as Compl. Ex. 18).  DCPS nonetheless again declined to fund additional testing.  Unhappy with DCPS's response to the new diagnosis, plaintiff then filed a third DPHR ("DPHR

---

[1]DCPS suspension procedures were also at issue in DPHR #1, see Compl. ¶ 11, but the instant complaint deals solely with the issues surrounding A.G.'s eligibility for a FAPE.

#3") on October 23, 2008, again claiming a failure to fund an independent psychological evaluation and a failure to provide her daughter with special education services. Compl. ¶¶ 19-23.

From there, the legal process and the interactions between plaintiff and DCPS parted ways and unfolded down separate paths. A third HOD ("HOD #3"), issued on December 6, 2008, dismissed DPHR #3 as barred by res judicata, reasoning that DPHR #3 "allege[d] no new facts to support revisiting the findings in the prior HOD." See HOD #3 at 3 (attached as Compl. Ex. 1). Plaintiff moved for reconsideration of HOD #3 on December 11, 2008. See Compl. ¶ 27; Pl. Mot. for Recons. (attached as Compl. Ex. 30). The hearing officer did not act on the motion for reconsideration within 30 days, and the motion was thus constructively denied on January 10, 2009. See Due Process Hearing Standard Operating Procedures § 1005 (attached as First Pl. Opp'n Ex. A).[2] Plaintiff filed the complaint now before this Court on April 10, 2009.

As the legal process wound on, the parties made progress in arranging special education services for A.G. On October 29, 2008, DCPS issued a funding letter for independent psychological and psychiatric evaluations. See Oct. 29, 2008 letter from Richard Nyankori ("Oct. 29 Letter") (attached as Second Def. Mem. Ex. 2). A psychological evaluation was performed on November 11, 2008, and a psychiatric evaluation was performed on March 30, 2009. See Evaluation Reports (attached as Second Def. Mem. Ex. 3). Plaintiff's counsel sent

---

[2]The briefing in this case consists of the defendants' memoranda in support of their motions to dismiss ("First Def. Mem." and "Second Def. Mem."), the plaintiff's oppositions to each ("First Pl. Opp'n" and "Second Pl. Opp'n"), and the defendants' two replies ("First Def. Reply" and "Second Def. Reply").

copies of these completed evaluations to DCPS on May 5, 2009.[3]  See May 5, 2009 letter from John Straus ("May 5 Letter") (attached as Second Def. Mem. Ex. 1).  DCPS then scheduled an eligibility meeting for A.G. on July 9, 2009, which identified A.G. as eligible for special education services.  See Affidavit of Tamara Clemmons ¶¶ 5-6 ("Clemmons Aff.") (attached as Second Def. Reply Ex. A).  The parties agreed to a behavioral assessment test, which was completed on July 29, 2009, see id. ¶ 6, and met again on July 30, 2009 to review the behavioral assessment and draft an IEP for A.G., see id. ¶¶ 7-8.  Plaintiff signed A.G.'s IEP the same day.  See IEP (attached as Second Def. Reply Ex. E).

## STANDARD

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  Therefore, the factual allegations must be presumed true, and plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint.  Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

---

[3]The letter may have been forwarded on April 14, 2009, but the precise date is immaterial to the legal issues at hand.

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court -- plaintiff here -- bears the burden of establishing that the court has jurisdiction.  See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority.").  "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).  Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true.  See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court is mindful that all that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S.

at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); Atherton v. Dist. of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).  A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief."  Id. at 1950-51.

## ANALYSIS

**I.    Statute of Limitations**

Defendants contend in their first motion to dismiss that the present action is barred on statute of limitations grounds.  See First Def. Mem. at 4-7.[4]  They base that position on the statutory language: "The party bringing [an IDEA] action shall have 90 days from the date of the decision of the hearing officer to bring such an action."  20 U.S.C. § 1415(i)(2)(B).  Plaintiff responds that her motion for reconsideration of the HOD tolled the running of the statute of

---

[4]Defendants' first motion to dismiss invokes Rule 12(b)(6), contending that plaintiff fails to state a claim under which relief may be granted.  The memorandum also argues that failure to bring a claim within a limitations period is a jurisdictional defect.  See First Def. Mem. at 5 n.2.  But "a governmental defendant's reliance on a federal statute of limitations is an affirmative defense that, unless explicitly stated otherwise in the text of the statute itself, does not implicate the Court's subject-matter jurisdiction."  Williams v. Chu, Civ.A.No. 07-0901, 2009 WL 2475168, at *1 (D.D.C. Aug. 13, 2009); see also Day v. McDonough, 547 U.S. 198, 205 (2006) ("A statute of limitations defense . . . is not 'jurisdictional.'").

limitations until that motion was constructively denied on January 10, 2009, making the filing of this action just 90 days after the constructive denial, although 124 days after the HOD, timely. See First Pl. Opp'n at 6-7.

The 90-day time restriction in the IDEA has only been in effect since 2005. Before then, courts in this circuit borrowed D.C. Ct. App. R. 15(a)(2) and held that HOD appeals had to be filed within 30 days. See Spiegler v. District of Columbia, 866 F.2d 461, 469 (D.C. Cir. 1989). District courts also adopted language from Spiegler that principles of equitable tolling apply to an HOD appeal, see id. at 468-69, borrowing D.C. Ct. App. R. 15(b), which provides that a motion for reconsideration tolls the limitation period until the motion is denied. See, e.g., R.S. v. District of Columbia, 292 F. Supp. 2d 23, 27 (D.D.C. 2003). Now that the IDEA has a specific limitations period, courts no longer apply D.C. Ct. App. R. 15(a). See, e.g., R.P. v. District of Columbia, 474 F. Supp. 2d 152, 152-53 (D.D.C. 2007). The IDEA, however, is silent as to the tolling effect of a reconsideration motion, and the D.C. Circuit has not determined whether D.C. Ct. App. R. 15(b) remains applicable.

Defendants argue that the need for equitable tolling has been obviated by the IDEA amendment because a motion for reconsideration must be resolved no later than 40 days after the original HOD -- 10 days to make a timely motion and 30 days to consider it -- which still leaves 50 days to file a district court complaint. See First Def. Mem. at 7. Under the old system, strict application of D.C. Ct. App. R. 15(a) could have barred a plaintiff from seeking relief in district court if the HOD reconsideration motion was not denied until the full 40 days after the original HOD, hence making tolling necessary. Plaintiff counters that the logic of Spiegler remains valid, at least as to tolling under R. 15(b), and reconsideration motions should continue to toll the

statute of limitations for administrative appeals.  See First Pl. Reply at 6.

Only one court appears to have addressed this precise question.  See Stanton ex rel. K.T. v. District of Columbia, Civ.A.No. 09-0988, 2009 WL 2345111 (D.D.C. July 30, 2009).  Stanton cites four reasons for continuing to toll the time limit for bringing an action in the district court based on a motion for reconsideration.  First, the IDEA time limit provision does not prohibit tolling.  See 20 U.S.C. § 1415(i)(2)(B); see also Stanton, 2009 WL 2345111 at *2.  Second, in interpreting other statutes, the Supreme Court has held that, "where a petition for reconsideration has been filed within a discretionary review period specifically provided by the agency (and within the period allotted for judicial review of the original order) . . . the petition tolls the period for judicial review of the original order, which can therefore be appealed to the courts directly after the petition for reconsideration is denied."  See Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs, 482 U.S. 270, 279 (1987) (considering reconsideration under the Hobbs Act); see also Stone v. Immigration and Naturalization Serv., 514 U.S. 386, 392 (1995) (noting that "both the [Administrative Procedure Act] and the Hobbs Act embrace a tolling rule: [t]he timely filing of a motion to reconsider renders the underlying order nonfinal for purposes of judicial review."); Stanton, 2009 WL 2345111 at *2.[5]  Third, the Student Hearing Office rules state that the pendency of a motion for reconsideration renders an HOD non-final for judicial review, see Stanton, 2009 WL 2345111 at *3 n.5, which could lead an aggrieved party to believe that the time limit under the IDEA would not begin to run until after the issuance of a decision

---

[5]The Court in Stone found that the tolling rule did not apply to the Immigration and Nationality Act, under which "Congress chose to depart from the ordinary judicial treatment of agency orders under reconsideration," because of explicit language in that statute requiring a motion for reconsideration to be consolidated with a petition for judicial review.  See Stone, 514 U.S. at 393-94.

on the reconsideration motion.  Lastly, even though the IDEA states that an HOD is "final,"[6] such finality does not operate to bar reconsideration or prevent tolling.  Instead, "[t]hat language has long been construed . . . merely to relieve parties from the <u>requirement</u> of petitioning for rehearing before seeking judicial review . . . but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal."  <u>Locomotive Eng'rs</u>, 482 U.S. at 284-25 (emphasis in original); <u>see also</u> <u>Stanton</u>, 2009 WL 2345111 at *3.

This Court sees no reason to depart from the reasoning or holding in <u>Stanton</u>.  None of the cases that defendants cite in their briefs would support an opposite conclusion because those cases do not interpret D.C. Ct. App. R. 15(b) <u>after</u> the 2004 IDEA amendments.  Hence, plaintiff's timely reconsideration motion tolled the IDEA statute of limitations until the motion was constructively denied on January 10, 2009.  This action was filed on April 10, 2009, within the 90 days allotted in 20 U.S.C. § 1415(i)(2)(B).  As a result, defendants' first motion to dismiss, which raises statute of limitations grounds, will be denied.

## II.   Mootness

The Court lacks jurisdiction[7] over any claim that does not constitute a "case" or "controversy."  <u>See</u> U.S. Const. art. III, § 2; <u>DeFunis v. Odegaard</u>, 416 U.S. 312, 316 (1974).  No case or controversy exists, so that any demands for relief arising therefrom are moot, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the

---

[6]<u>See</u> 20 U.S.C. § 1415(i)(1) (providing that a "decision made in a hearing conducted pursuant to subsection (f) or (k) of this section shall be final," subject to appeal or judicial review).

[7]Although defendants bring their second motion to dismiss as a motion under Fed. R. Civ. P. 12(b)(6), mootness is a jurisdictional issue considered under Fed. R. Civ. P. 12(b)(1).  <u>See</u> <u>Bender v. Jordan</u>, 515 F. Supp. 2d 10, 15-16 (D.D.C. 2007).

outcome." L.A. County v. Davis, 440 U.S. 625, 631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)).  Hence, "[i]f events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot."  McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the U.S., 264 F.3d 52, 55 (D.C. Cir. 2001).  Plaintiffs seek a reversal of HOD #3, a determination that res judicata did not apply to HOD #3, and attorney fees and costs.  See Compl. at 8.  Because a res judicata finding was the basis for HOD #3, the case is only moot if plaintiff has received everything she asked for in DPHR #3, which included: (1) funding of independent evaluations of A.G., including a comprehensive psychological assessment, social history, and psychiatric assessment; (2) an IEP meeting and an IEP; (3) a finding of denial of a FAPE by not funding an independent comprehensive psychological evaluation; (4) compensatory education because of the denial of a FAPE; and (5) attorneys' fees and costs.  See DPHR #3 at 6.  The events since HOD #3 render demands (1) and (2) moot, but the other three demands remain live.

*A.     Claims for Independent Evaluations, IEP Meeting, and IEP*

While HOD #3 was pending, DCPS authorized independent psychiatric and psychological evaluations for A.G., one of which was performed in November 2008, the other in March 2009.  See Oct. 29 Letter; Evaluation Reports.  The complaint admits that much.  See Compl. ¶ 24 ("the Office of Special Education issued a letter funding several of the outstanding evaluations the parent requested").  As litigation has proceeded, DCPS processed those evaluations, held an MDT meeting to determine A.G.'s eligibility for special education services, performed an additional behavioral assessment test, and conducted an IEP meeting that resulted in an IEP for A.G., signed by plaintiff.  See Clemmons Aff. ¶¶ 5-8; IEP.  These were two of the

five types of relief that plaintiff requested in DPHR #3, the complaint underlying HOD #3. Because a judgment would not "presently affect the parties' rights" as to plaintiff's requests for evaluations, an IEP meeting or an IEP, those claims are moot. See Noble v. Sombrotto, 525 F.3d 1230, 1241 (D.C. Cir. 2008).

Plaintiff posits that these claims fall within an exception to mootness because defendants' actions are capable of repetition yet evading review. See Second Pl. Opp'n at 6-7.[8] Under this doctrine, a claim is not moot if the challenged action could evade review, i.e., "is in its duration too short to be fully litigated prior to its cessation or expiration," and is capable of repetition, meaning that there "[is] a reasonable expectation that the same complaining party would be subjected to the same action again." Del Monte Fresh Produce Co. v. United States, 570 F.3d 316, 322 (D.C. Cir. 2009); see also Murphy v. Hunt, 455 U.S. 478, 482 (1982) (requiring "a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party") (internal quotations omitted).

Notwithstanding the rapid factual developments in this matter, this exception to mootness does not apply here because plaintiff has not made a showing that this claim is capable of repetition. Although the Court must evaluate "whether the legal wrong complained of by the plaintiff is reasonably likely to recur" as opposed to "whether the precise historical facts that spawned the plaintiff's claims are likely to recur," Del Monte, 570 F.3d at 324, the two claims that the Court finds moot are not reasonably likely to recur. The issues pertaining to A.G.'s preliminary eligibility for special education have been resolved through testing and preparation

---

[8] Aside from claiming that the doctrine applies, plaintiff's opposition does not explain how her case fits within the doctrine's two prongs. See Second Pl. Opp'n at 6-7.

of an IEP. Future litigation may arise over A.G.'s education, but the threshold issue of preliminary eligibility is a unique "legal wrong" that is not subject to repetition. See id. Hence, plaintiff's claim for independent evaluations, an IEP meeting, and an IEP are moot and do not fall within the "capable of repetition yet evading review" exception to mootness.

B.   *Claims for Finding of a Denial of a FAPE and Compensatory Education*

"Under the theory of compensatory education, courts and hearing officers may award educational services . . . to be provided prospectively to compensate for a past deficient program." Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 522-23 (D.C. Cir. 2005) (internal citation omitted). "[A] finding as to whether [a student] was denied a FAPE in the relevant time period is a 'necessary prerequisite to a compensatory education award.'" Brown v. District of Columbia, 568 F. Supp. 2d 44, 52 (D.D.C. 2008), citing Peak v. District of Columbia, 526 F. Supp. 2d 32, 36 (D.D.C. 2007). Whether recent events warrant a finding of a denial of a FAPE and compensatory education for A.G. to make up for her time without an IEP has not yet "outrun the controversy," and hence the mootness doctrine does not bar consideration of plaintiff's claims for findings of a denial of a FAPE and compensatory education. See McBryde, 264 F.3d at 55.

C.   *Claims for Attorneys' Fees*

A court may, in its discretion, "award reasonable attorneys' fees" to a "prevailing party" in a civil action under the IDEA. 20 U.S.C. § 1415(i)(3)(B)(I). Because the Court finds that plaintiff's claims for findings of a denial of a FAPE and compensatory education are not moot, dismissal of plaintiff's claim for attorneys fees would also be premature. See D.R. ex rel. Robinson v. District of Columbia, Civ.A.No. 07-1266, 2009 WL 2222680, at *5-6 (D.D.C. July

27, 2009) (evaluating on motion for summary judgment whether attorneys' fees were appropriate for IDEA plaintiff whose judicial claims were moot but who prevailed through concurrent administrative proceedings).  Hence, although two of plaintiff's claims are moot, the other three requests for relief -- for findings of a denial of a FAPE and compensatory education, and for attorneys' fees -- remain live and will not be dismissed.

## CONCLUSION

Defendants' motion to dismiss on statute of limitations grounds will be denied because plaintiff's motion for reconsideration of HOD #3 tolled the running of the 90-day period for filing suit.  Since the filing of this complaint, A.G. has received at least some of the relief she requested because DCPS has agreed to fund independent evaluations and because the parties have met, established A.G.'s eligibility for special educational services, and prepared an IEP to provide A.G. with those services.  Claims for that relief are now moot and defendants' second motion to dismiss will therefore be granted in part.  The Court will deny defendants' second motion as to the remaining claims because those claims have not yet been resolved.  A separate order accompanies this opinion.

/s/
JOHN D. BATES
United States District Judge

Dated:   September 16, 2009