# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BARBARA THEODORE,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA, et al.,

    Defendants.

Civil Action No. 09-0667 (JDB)

## MEMORANDUM OPINION

Plaintiff Barbara Theodore brings this action as parent and next friend of A.G. against the District of Columbia and Michelle Rhee, the Chancellor of the District of Columbia Public Schools ("DCPS"). Theodore alleges that defendants have failed to provide A.G. with appropriate testing to determine whether she is eligible for special educational services, thereby violating the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-82. She also challenges a hearing officer's determination ("HOD") that dismissed her case on December 6, 2009 pursuant to res judicata. Now before the Court are plaintiff's and defendants' cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. Upon consideration of the parties' motions, memoranda, and the entire record, and for the reasons stated below, the Court will grant defendants' motion for summary judgment and deny plaintiff's motion.

## BACKGROUND

**I.    Statutory Background: The Individuals with Disabilities Education Act**

Congress passed the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to

meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). The IDEA provides funding to assist states in implementing a "comprehensive, coordinated, multidisciplinary, interagency system of early intervention services for infants and toddlers with disabilities and their families." 20 U.S.C. § 1400(d)(2).

Under the IDEA, all states, including the District of Columbia, receiving federal education assistance must establish policies and procedures to ensure that "[a] free appropriate public education [FAPE] is available to all children with disabilities residing in the State." 20 U.S.C. § 1412(a)(1)(A). The law defines FAPE as "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required." Id. § 1401(9). Once a child is found to qualify, DCPS is required to develop and implement an Individualized Education Program ("IEP") for him or her. Id. § 1414(d)(2)(A). The IEP comprehensively describes the student's present academic level, details measurable annual goals for the student, specifies necessary educational and related services, and establishes the extent to which the student will participate in a regular education classroom. Id. § 1414(d)(1)(A)(i)(I)-(III).

In order to implement the IEP, a team including the child's parents determines where the child should be placed. Id. § 1414(e). If no public school can meet the child's needs, DCPS is required to find an appropriate private school and cover the tuition for the child. Id. § 1412(a)(10)(B)(i); see Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 369 (1985). If a parent disagrees with the IEP or the subsequent placement, he or she is entitled to an "impartial due process hearing" conducted by the state or local educational agency. 20 U.S.C. § 1415(f)(1)(A). Any party aggrieved by the hearing decision may bring a civil action challenging the decision in federal district court. Id. §

1415(i)(2)(A).

## II. Factual Background

The Court has previously detailed the history of this case in its September 2009 opinion and thus will only briefly discuss the relevant facts here. See Theodore v. Dist. of Columbia, 655 F. Supp 2d 136 (D.D.C. 2009). A.G. is a fifteen-year-old resident of the District of Columbia and a student at Wilson Senior High School. Defs' Renewed Mot. for Summ. J. and Reply in Opp'n to Pl's Renewed Mot. for Summ. J. (Defs' Mot.) at 2; Administrative Record ("AR") filed December 17, 2009 at 45-55. In response to A.G.'s performance problems in school, DCPS completed a psychological assessment of A.G. at the request of Theodore. See Pl's Renewed Mot. for Summ. J. (Pl's Mot.) at 4; Defs' Mot. at 3; AR at 45-55. The August 2007 report concluded that A.G. did not suffer from a learning disability and thus was not eligible for special education services. Id. Specifically, the testing found that A.G. had properly developed skills in reading, reading comprehension, math and writing and stated that A.G.'s scores were not suggestive of ADHD. Defs' Mot. at 3; AR at 45-52.

During the course of the 2007-2008 school year, A.G. continued to struggle in school. Pl's Mot. at 4; AR at 12. On December 5, 2007, a multi-disciplinary team ("MDT") convened to review the results of the August 2007 testing and to determine whether A.G. was eligible for special education services. Pl's Mot. at 4; Defs' Mot. at 3; AR at 56-61. Theodore informed the MDT at this time that A.G. had previously been diagnosed with attention deficit with hyperactive disorder ("ADHD") in 2001, but did not provide the team with any supporting documentation. Pl's Mot. at 4; Defs' Mot. at 3; AR at 58. Ultimately, the December 2007 MDT concluded that A.G. was not eligible for special education services. Id.

In January 2008, Theodore requested that DCPS perform neuropsychological and other examinations of A.G. Pl's Mot. at 4; Defs' Mot. at 3; AR at 75, 117. After DCPS denied Theodore's

request, she filed her first due process hearing request (DPHR #1) in March 2008 alleging that DCPS had denied A.G. a FAPE by failing to fund the additional testing. Pl's Mot. at 4; Defs' Mot. at 4; AR at 98-105. On April 17, 2008, a Hearing Officer Determination (HOD #1) was issued that dismissed Theodore's complaint with prejudice on the ground that DCPS had properly concluded that A.G. was ineligible for special educational services. Pl's Mot. at 4; Defs' Mot. at 4; AR at 98-105.

In May 2008, Theodore filed a second DPHR (DPHR #2) alleging that DCPS had denied A.G. a FAPE by failing to evaluate, determine eligibility for, and develop an appropriate IEP and placement for her. Pl's Mot. at 5; Defs' Mot. at 4. A second HOD (HOD #2) in July 2008 found that DCPS had properly evaluated A.G. and made a timely determination that A.G. was ineligible for special education services. Id. In September 2008, Theodore requested an additional MDT meeting where she presented letters from August 2008 indicating that A.G. had been diagnosed with ADHD in 2001. Pl's Mot. at 5-6; Defs' Mot. at 4; AR at 77-78. DCPS again declined to fund additional testing and Theodore then filed her third DPHR (DPHR #3). A third HOD (HOD #3), issued in December 2008, dismissed Theodore's complaint as barred by res judicata after finding that DPHR #3 contained facts and allegations that had already been addressed in the previous due process complaints and HODs. Pl's Mot. at 6; Defs' Mot. at 5. After Theodore's motion for reconsideration was constructively denied, she filed the complaint now before this Court on April 10, 2009.

In its 2009 opinion, this Court dismissed several of Theodore's requests for relief as moot. See Theodore, 655 F. Supp. at 144 (finding that Theodore's requests for additional evaluations and an IEP meeting were moot because a judgment would not "presently affect the parties' rights"). The remaining claim is Theodore's contention that an administrative hearing officer improperly rejected her allegation that DCPS's failure to fund independent psychological testing for A.G. denied her a FAPE, and that A.G. is thus entitled to compensatory education. After requesting additional briefing from the parties

on the issue of res judicata, the Court can now resolve the parties' cross-motions for summary judgment.

## STANDARD OF REVIEW

I. **Summary Judgment**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## II. IDEA

Under the IDEA, "[a]ny party aggrieved by the findings and decision" rendered during administrative proceedings may "bring a civil action" in state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2), (i)(3)(A). The reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). On review of an HOD, the burden of proof falls upon the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the hearing officer was wrong." Reid ex. rel. Reid v. Dist. of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1989)).

The preponderance-of-the-evidence standard of review, the Supreme Court has held, does not authorize unfettered de novo review. Bd. of Educ. of Hendrick Hundson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982). Rather, consideration of the record impliedly requires courts to give "due weight" to the administrative proceedings, id., and "factual findings from the administrative proceedings are to be considered prima facie correct." S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003). Therefore, courts may not substitute their own views for those of the hearing officer, see Rowley, 458 U.S. at 206; Shaw v. Dist. of Columbia, 238 F.Supp. 2d 127, 136 (D.D.C. 2002), and a court upsetting a hearing officer's decision "must at least explain its basis for doing so," Kerkam, 862 F.2d at 887. At the same time, "the district court's authority to 'hear additional evidence at the request of a party,' and 'bas[e] its decision on the preponderance of the evidence' . . . 'plainly suggest[s] less deference than is conventional' in administrative proceedings." Reid, 401 F.3d at 521 (quoting Kerkam, 862 F.2d at 887). A motion for summary judgment operates as a motion for

judgment based on the evidence comprising the record and any additional evidence the Court may receive. See Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997) ("[T]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record").

## DISCUSSION

Theodore argues that HOD #3 improperly dismissed her complaint after finding that the issues raised were barred by res judicata. Res judicata involves two separate legal theories - - claim preclusion and issue preclusion. "Claim preclusion generally refers to the effect of a prior litigation in foreclosing successive litigation of the very same claim, whether or not re-litigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001) (citing Restatement (Second) of Judgments § § 17, 27, pp. 148, 250 (1980); D. Shapiro, Civil Procedure: Preclusion in Civil Actions 32, 46 (2001)). Only claim preclusion is at issue here.

Claim preclusion seeks to "[protect] litigants from the burden of re-litigating an identical issue with the same party or his privy and [promote] judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). The doctrine focuses on whether the same cause of action is implicated in both the initial and subsequent lawsuits, meaning that the two lawsuits "share the same nucleus of facts." Serpas v. Dist. of Columbia, 2005 U.S. Dist. LEXIS 44536, *12-13 (D.D.C. 2005) (citing Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002)). In determining whether the same nucleus of facts is at issue, "the court should consider 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit

conforms to the parties' expectations of the business understanding or usage.'" Id. at *13 (quoting I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 723 F.2d 944, 949 n. 5 (D.C. Cir. 1983)). Ultimately, the successful application of the claim preclusion doctrine requires three things: "(1) the presence of the same parties or privies in the two suits; (2) claims arising from the same cause of action in both suits; and (3) a final judgment on the merits in the previous suit." Friendship Edison Public Chartered School v. Suggs, 562 F. Supp. 2d 141, 148 (D.D.C. 2008) (citing Apotex, Inc. v. FDA, 393 F.3d 210, 217 (D.C. Cir. 2004)). Although courts were initially hesitant to use res judicata in the administrative setting, the doctrine has consistently been applied to administrative hearings that reach a final judgment on the merits. See Hobby v. Hodges, 215 F.2d 754, 759 (10th Cir. 1954); Robinson v. Heckler, 593 F. Supp. 737, 741 (D.D.C. 1984); Mannerfrid v. Brownell, 145 F. Supp. 55, 56 (D.D.C. 1956); Rhema Christian Center v. Dist. of Columbia Bd. of Zoning Adjustment, 515 A.2d 189, 192 (D.C. 1986) (finding that final administrative decisions that operate as a judicial proceeding generally will be accorded preclusive effect by courts).

Theodore argues that Hearing Officer Raskin incorrectly found in HOD #3 that her allegation that DCPS failed to fund an independent evaluation of A.G. had been fully litigated in HOD #1 and HOD #2 and thus was barred by res judicata. Pl's Mot. at 9. But as made clear by the separate HOD opinions issued in this case, each of Theodore's three complaints raised the same issues and focused on the same facts: that her daughter, A.G., was denied a FAPE and that DCPS should have paid for additional evaluations. In HOD #1, the hearing officer concluded that DCPS "properly determined that [A.G.] was ineligible for special education services" in December 2007 because DCPS was able to "rule out any disability." Pl's Ex. 5 (Hearing Officer's Decision issued by Hearing Officer Charles R. Jones on April 7, 2008), p. 4. In July 2008, a hearing officer again determined in HOD #2 that DCPS timely evaluated A.G. in all areas of suspected disability and properly concluded that she was not

eligible for special education services. Pl's Ex. 3 (Hearing Officer's Decision issued by Hearing Officer Charles R. Jones on July 21, 2008), p. 4-5. Moreover, the hearing officer determined then that DCPS properly complied with the relevant "Child Find" regulations and that Theodore's reliance on A.G.'s 2001 ADHD diagnosis was not probative because "from an evidentiary prospective, evaluations over 3 years old are not current and therefore, quite unreliable." Id. at 5. The hearing officer concluded that "the comprehensive psychological did not provide a scintilla of support for a neuropsychological evaluation." Id.

Under claim preclusion, "it is the factual nucleus that gives rise to a plaintiff's claims, not a legal theory on which the claim rests that determines whether the claim may proceed." Lindsey v. Dist. of Columbia, 609 F. Supp. 2d 71, 77 (D.D.C. 2009) (referencing Page v. U.S., 729 F.2d 818, 820 (D.C. Cir. 1984)). Although Theodore tries to mask her argument under a new legal theory in her third DPHR, all three of her complaints ultimately rely on the same "factual nucleus" - - her disagreement with the outcome of A.G.'s 2007 evaluation. Because claim preclusion is intended to promote judicial efficiency, "'[r]es judicata bars re-litigation not only of matters determined in a previous litigation but also ones a party could have raised.'" Owens v. Dist. of Columbia, 631 F. Supp. 2d 48, 55 (D.D.C. 2009) (citing Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC, 569 F.3d 485, 491 D.C. Cir. 2009)). Hence, "'claim preclusion precludes the litigation of claims, not just arguments.'" Id. Try as Theodore might, all three DPHRs focus on the same factual nucleus and claims - - that DCPS denied A.G. a FAPE and failed to properly evaluate her. Unfortunately, this issue has already been decided in HOD #1 and #2 and thus was properly found to be barred by res judicata in HOD #3.

Under the res judicata standard, there is little question that the issue whether DCPS failed to properly evaluate A.G., as raised in DPHR #3, was "related in time, space, and origin" to the issues

presented in the prior hearings. A district court is expected to give "due weight" to the determination of the hearing officer. Rowley, 458 U.S. at 206. Although Theodore argues that DPHR #3 is not barred by res judicata because it included new evidence - - the letters indicating A.G. had previously been diagnosed with ADHD in 2001 - - "'newly discovered evidence normally does not prevent the application of res judicata,' unless the evidence was 'either fraudulently concealed or when it could not have been discovered with due diligence.'" Guerrero v. Katzen, 774 F.2d 506, 508 (D.C. Cir. 1985) (citing Dreyfus v. First Nat'l Bank of Chicago, 424 F.2d 1171, 1175 (7th Cir. 1970); Costantini v. Trans World Airlines, 681 F.2d 1199, 1202-03 (9th Cir. 1982)). Neither of those circumstances is present in this case.

Here, although Theodore initially raised A.G.'s prior ADHD diagnosis at the December 2007 MDT, she did not provide any documentation to substantiate this diagnosis, especially in light of the contradictory results of A.G's 2007 DCPS evaluation. Moreover, as noted in HOD #3, Theodore made no allegation that DCPS failed to address A.G.'s ADHD. See Pl's Ex. 1 (Hearing Officer's Decision issued by Hearing Officer Frances Raskin on December 6, 2008), p. 3. While Theodore did allege in DPHR #3 that A.G. had previously been diagnosed with ADHD, as Officer Raskin noted in his decision, her complaint "did not allege that this diagnosis was the reason why [she] was again seeking an authorization for an independent comprehensive psychological evaluation. Rather, the [c]omplaint reiterates the allegation in the previous complaint that the educational advocate disagreed with the 2007 evaluation." Id. The fact that Theodore sought to introduce new evidence, then, is simply not enough to avoid claim preclusion.

Ultimately, because Theodore's claims in her third DPHR arise from the same nucleus of facts as the prior HODs and involve the same parties as a prior action that involved a final judgment on the merits, this Court affirms the hearing officer's determination in HOD #3 that DPHR #3 was properly

barred by res judicata.[1]

## CONCLUSION

Accordingly, the Court will deny Theodore's renewed motion for summary judgment and grant defendants' motion for summary judgment. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: March 28, 2011

---

[1] Because res judicata applies, the Court does not need to discuss the merits of Theodore's other claims regarding DCPS's failure to provide a FAPE and A.G.'s right to compensatory education.